No. 840

First Circuit

WRIGHT & ANDERSON, INC., v. ANTHON
(ALFRED ANTHON, Intervener)

(October 7, 1931. Opinion and Decree.)

Rownd & Warner, of Hammond, attorneys for plaintiff, appellee.

Ellis, Ellis & Ellis, of Amite, attorneys for intervener, appellant.

LEBLANC, J. Plaintiff, a judgment creditor of Mrs. Carrie Anthon, had a writ of fieri facias issue against her, under which the sheriff seized and took in his possession, 19 milk cows and one bull. Alfred Anthon, her son, intervened in the proceeding, and obtained a rule for the issuance of an injunction to restrain the sale of the property seized on the ground that it belonged to him. The matter came for trial on the rule for a preliminary injunction and resulted at first in a judgment making the rule absolute and ordering the injunction to issue. On further trial on the merits, however, the lower court rendered judgment decreeing the 19 milk cows to be the property of Mrs. Carrie Anthon and as such, subject to seizure to satisfy the judgment rendered against her. The judgment further recognized Alfred Anthon as the owner of the bull and ordered it released from seizure and the preliminary injunction which had been granted was set aside and annulled. The intervener appealed, and as plaintiff has not answered asking for an amendment of the judgment with respect to the ownership of the bull, the only issue now in the case is the claim presented by the intervention of Alfred Anthon concerning the ownership of the cows.

After the death of her husband, the cows became the property of Mrs. Anthon. Her son Alfred, who with his child came to live with her after his wife's death, took charge of the herd for his mother and started in the dairy business. It was then that he bought the bull which the court declared was his property. He claims that his mother sold the cows to him with the understanding that he was to pay for them at the rate of $50 per head out of the profits that were to be made in the operation of the dairy. His counsel contend that in the agreement were embodied all the es-

sential elements of a bona fide sale. There was the object, the price and consent. No actual delivery was necessary, it is argued, as the cows were already in the possession of the vendee, herded together with other cows of his own in his barn. They were his cows and therefore not subject to the seizure that had been levied against them.

The only direct testimony bearing on the alleged sale of the cows is that of Alfred Anthon and his mother, and whilst it might be said that Alfred is rather positive in his assertion, we find the testimony of Mrs. Anthon, especially regarding the price to be paid for the cattle, so loose and uncertain and at times so evasive, that it casts a serious doubt about the whole transaction. It must be borne in mind that she was one of the parties to the sale, and is trying to uphold it as bona fide and valid. On the trial of the rule, when she is asked the direct question, what did Alfred pay her for the cattle, she answers that she doesn't think that is anybody's business and when pressed for further reply says that "it was a settlement of family affairs" which she thought was all right. On being finally directed by the court to answer the question, she says: "He was to pay me considerable" and asked again, "How much did he agree to pay you?" answers: "About fifty dollars a head." She is not a bit more positive regarding the time when the alleged sale took place, saying at first that it was two years ago, then changing that, when she testified at the trial on the merits, to "some time last spring," which would have been less than a year before. At the last trial it may be said that she wasn't any more certain as to the price Alfred agreed to pay her as she again states that it was "about fifty dollars a head." To further indicate how indefinite her testimony is, we might refer to that part of it regarding the number of cattle said to have been sold. When she is asked another direct question: "How many cattle did you sell Alfred?" she answers: "Fifty-six or—no. Hold on, I don't know how many it was. It was about, I guess, forty head." It is rather significant also that on the day the cows were seized, Mrs. Anthon made no protest to the deputy sheriff who was executing the writ, and on the contrary, pointed out to him, if we are to believe him at all, twenty head of cattle "as belonging to her." She denies this, it is true, although she admits referring to them as "our cows, or our cattle, meaning that they belonged to the place, and not to somebody else, the neighbors."

Under such evidence, we are of the opinion that the lower court correctly held that there was no sale of the cows from Mrs. Anthon to her son. Article 2464, Revised Civil Code, prescribes that:

"The price of the sale must be certain, that is to say, fixed and determined by the parties."

Certainly it cannot be said from this testimony of the purported vendor that the price was certain and that it had been fixed and determined by the parties. For this reason then, if for no other, it would seem that the pretended sale cannot stand.

But there is another consideration which prompts us to regard the sale with further doubt as to its validity. Both parties testify that the price was to be paid after the cows would have made enough profit as dairy cows for their new owner to pay for themselves. A sale under such contingency might be construed as one made with a suspensive condition, which, under the provisions of article 2471 of the Civil Code, "does not transfer the property to the buyer, until the fulfillment of the con-

dition." Mrs. Anthon's testimony is to the effect that she had not been paid anything yet on account of the purchase price, from which it can readily be assumed that the condition had not been fulfilled.

Most probably it was Mrs. Anthon's intention that her son Alfred would become the owner of the cattle, under an agreement of some sort, the nature of which seems to be revealed in her answer to a question as to how much did he owe her, the reply being: "He owes me what I need from now until I die." Viewed in that light the contract might be considered in the nature of an onerous or a remunerative donation, which however, would not be valid for want of form, not having been executed by notarial act as required by articles 1536 and 1538, R. C. C., and could not besides affect the rights of the donor's judgment creditors.

We think the judgment appealed from is correct and it is therefore affirmed.